UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 07-357** |
| **KEVIN DAVIS** | **SECTION I** |

### ORDER & REASONS

Before the Court is *pro se* defendant Kevin Davis' ("Davis") motion[1] for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). The government opposes the motion.[2] For the following reasons, the motion is denied.

### I.

On January 10, 2008, Davis pled guilty to counts one, two, and three of a four-count superseding bill of information, which charged him with (1) distribution of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); (2) possession of cocaine and marijuana after having been previously convicted of a drug offense in violation of 21 U.S.C. § 844(a); and (3) possession of marijuana after having been previously convicted of a drug offense in violation of 21 U.S.C. § 844(a).[3] On April 10, 2008, this Court sentenced Davis to a term of imprisonment of 262 months as to count

---

[1] R. Doc. No. 58.
[2] R. Doc. No. 60.
[3] R. Doc. No. 13. Count four of the superseding bill of information was filed pursuant to the requirements of 21 U.S.C. §§ 851(a) and 841 to establish Davis' prior conviction for sentencing purposes. *Id.* at 2.

1

one and 24 months as to each of counts two and three, to be served concurrently, as well as an eight-year term of supervised release.[4]

Davis appealed his sentence, and, on March 17, 2009, the United States Court of Appeals for the Fifth Circuit dismissed his appeal as frivolous.[5] On October 16, 2013, this Court denied Davis's motion to vacate his sentence pursuant to 28 U.S.C. § 2255.[6] On June 20, 2019, the Court granted Davis a sentence reduction from 262 months to 188 months as to count one, pursuant to § 404 of the First Step Act.[7] Davis is currently incarcerated at FCI Butner Medium II; his projected release date is July 2, 2021.[8]

On May 14, 2020, Davis filed a motion[9] for compassionate release pursuant to the First Step Act. The Court dismissed Davis' motion without prejudice, explaining that Davis had failed to demonstrate statutory exhaustion.[10]

Davis now moves once more for compassionate release pursuant to the First Step Act, this time alleging that he has satisfied the administrative exhaustion

---

[4] R. Doc. No. 31, at 1–3.
[5] R. Doc. No. 43.
[6] R. Doc. No. 48.
[7] R. Doc. No. 54.
[8] R. Doc. No. 60, at 3 (citing information accessed through the Bureau of Prison's ("BOP") website, www.BOP.gov). Davis states in the instant motion that his release date is December 23, 2020, R. Doc. No. 58, at 1, but, according to the government, that date is incorrect. *See* R. Doc. No. 60, at 3.
[9] R. Doc. No. 56.
[10] R. Doc. No. 57, at 1. The Court also noted that, in his initial motion for compassionate release, Davis provided "scant reasons for the Court to grant his request . . . . His one-paragraph motion simply asserts that he is "not incarcerated for a violent crime" and that he is "not a violent person." He does not provide any information with respect to his health status[.]" *Id.* (quoting R. Doc. No. 56, at 1).

requirement.[11]  Davis argues that his medical condition—hepatitis C—and the fact that, according to Davis, FCI Butner Medium II "is the BOP's hottest spot of COVID-19 cases" constitute extraordinary and compelling reasons for a sentence reduction.[12] Davis also states that he (1) has been deemed a non-violent offender; (2) was enrolled in and nearly completed the BOP's Residential Drug Abuse Program ("RDAP"), which was postponed because of COVID-19;[13] and (3) that his release address recently passed a federal parole officer's inspection.[14]  In light of these alleged circumstances, Davis asks that the Court reduce his sentence to time served or, alternatively, to home confinement to serve the remainder of his sentence.[15]

---

[11] R. Doc. No. 58, at 1.

[12] *Id.*

[13] *Id.*; *see also* https://www.bop.gov/inmates/custody_and_care/substance_abuse_treatment.jsp last visited Sept. 20, 2020) (describing RDAP as "the Bureau's most intensive treatment program. . . Research findings demonstrated that RDAP participants are significantly less likely to recidivate and less likely to relapse to drug use than non-participants. The studies also suggest that the Bureau's RDAPs make a significant difference in the lives of offenders following their release from custody and return to the community.").

[14] *Id.*

[15] *Id.* at 2.  The Court cannot grant Davis home confinement.  As explained in *United States. v. Crinel*, No. 15-61, 2020 WL 3884521, at *3 (E.D. La. July 9, 2020) (Morgan, J.):

> 18 U.S.C. § 3621 provides "[t]he *Bureau of Prisons* shall designate the place of the prisoner's imprisonment," and, pursuant to § 3622, "[t]he *Bureau of Prisons* may release a prisoner from the place of h[is] imprisonment for a limited period," under certain circumstances.  As a result, BOP has exclusive authority to determine where a prisoner is housed and the terms of a prisoner's pre-release custody.
> Because [defendant] seeks release to home confinement, h[is] initial remedy is by administrative action within BOP.  The proper vehicle to challenge BOP's administrative decisions is a petition pursuant to 28 U.S.C. § 2241.  A challenge to an administrative decision of BOP pursuant to 28 U.S.C. § 2241 must be filed in the district where [defendant] is incarcerated.

3

The government opposes Davis' motion and argues that it should be denied because hepatitis C does not rise to the level of an "extraordinary and compelling" reason that warrants his release.[16]  Additionally, the government reports that, as of August 5, 2020, the date of filing their opposition to Davis' motion, FCI Butner Medium II had "no active cases among inmates[.]"[17]

## II.

In relevant part, 18 U.S.C. § 3582(c)(1)(A)(i) provides that a court may not modify a term of imprisonment unless a motion is made after the prisoner has exhausted his administrative remedies and the court, after considering the factors set forth in 18 U.S.C. § 3553(a), finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).  The reduction must also be "consistent with applicable policy statements issued by the Sentencing Commission." *Id*.

The Sentencing Commission's relevant policy statement provides that extraordinary circumstances exist when the defendant suffers from a terminal illness

---

*Id.* (citations omitted).  FCI Butner Medium II, where Davis is incarcerated, is located in Butner, North Carolina and, therefore, it is outside the Court's jurisdiction.  *See FCI Butner Medium II*, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/btf/ (listing the facility's address).

[16] R. Doc. No. 60, at 3–4.

[17] *Id.* at 3 (stating that, "according to BOP's COVID-19 update webpage (www.bop.gov/coronavirus/), as of Aug. 4, 2020, FCI Butner Medium II has one staff member and zero inmates that are currently positive for COVID- 19.").

As of September 20, 2020, three inmates and zero staff members have tested positive for COVID-19 at FCI Butner Medium II, and six inmates and two staff members have recovered.  Zero inmates and zero staff members have died from it.  *See COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited Sept. 20, 2020).

4

or a "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13.

Although, historically, sentence reductions could be ordered only upon a motion by the Director of the BOP, the First Step Act of 2018 amended the statute to additionally allow prisoners to petition the Court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). However, the Sentencing Commission's policy statements have not been amended since the enactment of the First Step Act and, consequently, a portion of the policy statement now squarely contradicts 18 U.S.C. § 3582(c)(1)(A) as amended. The relevant policy statement continues to plainly provide that a term of imprisonment may be reduced only upon a motion by the Director of the BOP upon a finding of extraordinary circumstances warranting a sentence reduction and a determination that the defendant is not a danger to the safety of any person or the community at large. U.S.S.G. § 1B1.13 cmt. n.4. This discrepancy has been recognized by many courts. *See United States v. Perdigao,* 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (Fallon, J.) (collecting cases).

Courts have concluded that this discrepancy means that the Sentencing Commission does not have a policy position applicable to motions for compassionate release filed by defendants pursuant to the First Step Act. *See, e.g., United States v.*

5

*Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019). Consequently, these district courts have found that they have discretion to determine what constitutes "extraordinary and compelling reasons" on a case-by-case basis, and that the policy statement, while helpful, is not dispositive with regard to such claims. *See id.* ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)."); *United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) ("[W]hen a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)–(C) warrant granting relief."); *see also United States v. Haynes*, No. 93-1043, 2020 WL 1941478, at *14 (E.D.N.Y. Apr. 22, 2020) (collecting cases).

Accordingly, the Court will consider whether Davis has presented the Court with evidence that "extraordinary and compelling reasons" warrant compassionate release and that he does not pose a danger to the safety of any other person or the community, all in light of the § 3553(a) factors.

### A. Exhaustion of Administrative Remedies

Section 3582 allows a court to consider a defendant's motion for modification of a term of imprisonment only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. §

3582(c)(1)(A). *See United States v., Franco*, No. 20-60473, 2020 WL 5249369, at *1–*2 (5th Cir. SEot. 3, 2020) (holding that the statutory requirement is not jurisdictional but is mandatory).

Davis states that on May 30, 2020, he "exhausted his Administrative Remedy" to the warden of his facility, who "did not respond[.]"[18] Davis also states that he "exhausted his remedy through his unit manager," whom Davis reports denied his request on June 15, 2020.[19] The government does not contest that Davis satisfied this requirement.[20] Accordingly, the Court has jurisdiction to consider Davis' motion. *See* 18 U.S.C. § 3582(c)(1)(A).

### B. Extraordinary and Compelling Reasons

Although the policy statements of the Sentencing Commission have not been amended to reflect the statutory changes brought about by the First Step Act, the policy statements are nevertheless instructive to the Court's determination of whether there are "extraordinary and compelling reasons" that warrant a reduction of Davis' sentence. *See Perdigao*, 2020 WL at *2; *Beck*, 425 F. Supp. at 579. The Sentencing Commission's relevant policy statement provides, in pertinent part, that extraordinary circumstances exist when the defendant suffers from "a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)" or a "serious

---

[18] R. Doc. No. 58, at 1.
[19] *Id.*
[20] R. Doc. No. 60, at 1 ("In his motion he claim [sic] that that the Bureau of Prisons ("BOP") denied his request for compassionate release on June 15, 2020. Assuming this is information is accurate, this Court would have jurisdiction to hear this claim.").

physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. 1(A).

Davis claims to suffer from hepatitis C.[21] Davis does not provide documentation in support of this condition, but the government does not contest the veracity of his assertion.[22] Accepting as true that Davis suffers from hepatitis C, the Court finds that condition does not rise to the level of terminal illness or that it substantially diminishes Davis' ability to provide self-care from within FCI Butner Medium II. There is no evidence that hepatitis C causes an individual to be immunocompromised or that either otherwise increases the risk of COVID-19 infection.[23]

Moreover, courts have found that hepatitis C does not amount to an extraordinary or compelling reason for release. *See United States v. Ellis*, No. 15-124, 2020 WL 5073562, at *4 (E.D. La. Aug. 26, 2020) (Morgan, J.) (finding that a

---

[21] R. Doc. No. 58, at 1.
[22] R. Doc. No. 60, at 3.
[23] *See People with Certain Medical Conditions*, Coronavirus Disease 2019 (COVID-19), CDC (updated Sept. 11, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Sept. 20, 2020) (listing the underlying medical conditions that present an increased risk for severe illness from COVID-19 and not mentioning hepatitis C); *see also What to Know About Liver Disease and COVID-19*, CDC (updated May 5, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html#:~:text=Older%20adults%20and%20people%20of,questions%20related%20to%20their%20risk (last visited Sept. 20, 2020) ("Currently, we have no information about whether people with hepatitis B or hepatitis C are at increased risk for getting COVID-19 or having severe COVID-19.").

defendant who claimed to suffer from "hepatitis-C, high blood pressure, post-traumatic stress disorder, bleeding ulcers, and serious acid reflux" failed to "persuade the Court he is particularly vulnerable to severe illness from COVID-19 so as to warrant a finding of 'extraordinary and compelling' circumstances"); *United States v. Arroyo*, No. 08-308, 2020 WL 4504439, at *1, *3 n.3 (E.D. La. Aug. 5, 2020) (Lemmon, J.) (denying compassionate release for a defendant suffering hepatitis C, high cholesterol, and back pain stemming from disc issues because the defendant failed to exhaust his administrative remedies, but stating that "even if" the exhaustion requirement had been waived by the government or satisfied, defendant did "not establish[] that any extraordinary or compelling reasons existed for modifying his sentence"); *United States v. Barnes*, No. 14-86, 2020 WL 3606354, at *2 (E.D. La. July 2, 2020) (Barbier, J.) (stating that the defendant's high cholesterol, hepatitis C, high blood pressure, liver disease, and nerve damage resultant from a bullet wound "do not elevate Defendant's risk of contracting Covid-19 to the level of 'extraordinary and compelling.'"). Accordingly, the Court finds that Davis' medical condition does not provide grounds for compassionate release.

Davis' concerns regarding COVID-19 also do not warrant a reduction of his sentence. BOP is undertaking measures to curb the spread of COVID-19 and to limit inmates' risk of contracting it.[24] Davis has alleged only general concern related to

---

[24] BOP has implemented revised preventative measures for all institutions, including quarantine and isolation procedures, to require that all newly-admitted inmates be assessed using a screening tool and temperature check. *See BOP Implementing Modified Operations*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Sept. 21, 2020).

9

the presence of COVID-19 at FCI Butner Medium II.[25] Numerous courts have concluded that such broad allegations do not warrant a sentence reduction under § 3582. *See United States v. Clark*, No. 17-85, 2020 WL 1557397, at *4 (M.D. La. Apr. 1, 2020) ("Defendant cites no authority for the proposition that the *fear* of contracting a communicable disease warrants a sentence modification."); *United States v. Zywotko*, No. 19-113, 2020 WL 1492900, at *2 (M.D. Fla. Mar. 27, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13.") (quoting *United States v. Eberhart*, No. 13-00313, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020)); *United States v. Gileno*, No. 19-161, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) ("With regard to the COVID-19 pandemic, Mr. Gileno has also not shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno."); *United States v. Emmons*, No. 16-98, 2020 WL 3086606, at *2 (S.D. Miss. June 10, 2020) ("Were such concerns sufficient, every federal prisoner would be entitled to a sentence reduction under § 3582(c)(1)(A).").

---

Asymptomatic inmates are placed in quarantine for a minimum of 14 days or until cleared by medical staff, and symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation. *Id*.

[25] *See* R. Doc. No. 58, at 1.

While the Court is alert to the risks of COVID-19 infection in correctional facilities, Davis has also not demonstrated that BOP's response to the COVID-19 pandemic and the protocols it has implemented to curtail the spread of the virus are inadequate. Moreover, the existence of COVID-19 at FCI Butner Medium II alone cannot independently justify compassionate release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

### III.

The Court does not find that there are compelling or extraordinary reasons warranting a reduction of Davis' sentence.

Accordingly,

**IT IS ORDERED** that Davis' motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) is **DENIED**.

New Orleans, Louisiana, September 22, 2020.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**